1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARLIN PENN,

11              Plaintiff,                    No. 2:09-cv-2443 KJM JFM (PC)

12        vs.

13   WARDEN MCDONALD, et al.,                 ORDER AND

14              Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on plaintiff's claims raised in his amended

18   complaint filed December 7, 2009, arising from allegations that defendants at High Desert State

19   Prison ("HDSP") tampered with, withheld and prevented his legal mail from being mailed.  This

20   matter is before the court on defendants' motion for summary judgment.

21                              PROCEDURAL BACKGROUND

22              On December 7, 2009, plaintiff filed a first amended complaint ("FAC"),

23   superseding his August 31, 2009 complaint.[1]  In the FAC, plaintiff claims that defendants have

24   _____

25        [1]  Though the court will proceed with this FAC as the operative complaint in this action,
     the undersigned notes that plaintiff filed it as an "amendment" to the original complaint and
     thereby did not attach to his FAC numerous exhibits that were attached to the original complaint.
26   Although, as a general rule, an amended complaint supersedes the original complaint, see Loux

                                         1

1   prevented plaintiff from corresponding with Federal Bureau of Investigations ("FBI") Agent

2   Brian Cook ("Cook") and with attorney Charoletta Ransom ("Ransom").

3                On March 29, 2010, defendants M.D. McDonald and M. Keating filed an answer.

4   On April 9, 2010, a discovery and scheduling order issued.  On October 25, 2010, defendants

5   McDonald and Keating filed the instant motion for summary judgment.  On December 8, 2010,

6   defendant Jeanne Woodford filed a joinder to the motion for summary judgment.  On December

7   29, 2010, plaintiff filed an opposition.  On January 28, 2011, defendants filed a reply.  On

8   February 7, 2011, plaintiff filed a sur-reply.  On February 15, 2011, defendants filed a motion to

9   strike plaintiff's sur-reply.  On February 24, 2011, plaintiff filed a request to file a sur-reply.

10               SUMMARY JUDGMENT STANDARDS UNDER RULE 56

11               Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant

12   summary judgment if the movant shows that there is no genuine dispute as to any material fact

13   and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]  A shifting

14   burden of proof governs motions for summary judgment under Rule 56.  Nursing Home Pension

15   Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir.

16   2010).  Under summary judgment practice, the moving party

17          always bears the initial responsibility of informing the district court of the basis
            for its motion, and identifying those portions of "the pleadings, depositions,
18          answers to interrogatories, and admissions on file, together with the affidavits, if
            any," which it believes demonstrate the absence of a genuine issue of material
19          fact.

20   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

21   56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

22

23   v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), the court finds that plaintiff misunderstood the order
     granting him leave to amend and, therefore, will append the exhibits to the FAC.  Reference to
24   these exhibits will include citation to the original complaint.

25          [2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
     2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26   56, "[t]he standard for granting summary judgment remains unchanged."

                                                    2

only prove that there is an absence of evidence to support the non-moving party's case." In re

Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

not have the trial burden of production may rely on a showing that a party who does have the trial

burden cannot produce admissible evidence to carry its burden as to the fact").

        If the moving party meets its initial responsibility, the opposing party must

establish that a genuine dispute as to any material fact actually does exist.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

judgment, the opposing party must demonstrate the existence of a factual dispute that is both

material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v.

Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

party opposing summary judgment must support the assertion that a genuine dispute of material

fact exists by:  "(A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact."[3]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

/////

---

   [3]  "The court need consider only the cited materials, but may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

1    In resolving a summary judgment motion, the evidence of the opposing party is to

2 be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be

3 drawn from the facts placed before the court must be viewed in a light most favorable to the

4 opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

5 However, to demonstrate a genuine factual dispute, the opposing party "must do more than

6 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

7 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

8 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

9    On January 26, 2010, the court advised plaintiff of the requirements for opposing

10 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

11 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

12 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

13                                    FACTS

14    The following facts are undisputed unless noted otherwise.  At all times relevant

15 to this action, plaintiff was a state prisoner at HDSP, defendant Keating was the Sergeant of the

16 Mailroom at HDSP, defendant McDonald was the Warden at HDSP, and defendant Woodford

17 was the Director of the California Department of Corrections and Rehabilitation ("CDCR").  As

18 the Sergeant of the Mailroom, Keating was responsible for responding to inmate appeals

19 pertaining to mail issues.  Keating Decl., ¶ 1.

20    An inmate may have mail processed as either regular mail or as confidential mail.

21 An inmate may correspond confidentially only with those persons, legal organizations, public

22 agencies and governmental entities listed at California Code of Regulations ("CCR"), Title 15

23 Section 3141(c).  The list includes state and federal officials, county agencies, state and federal

24 judges and courts, attorneys listed with a state bar association, the director of the CDCR, and

25 certain legal service organizations.  CCR § 3141(c).  The FBI is not an agency listed in CCR

26 § 3141(c).  See id.

1    Incoming mail will be processed as confidential mail if the envelope "bears the

2    name or title and a return address of persons and the office of persons listed in Section 3141." Id.

3    § 3143.  Confidential mail may be opened and inspected for contraband only in the presence of

4    the inmate.  CCR § 3144.  The inspecting correctional officers may not read the contents of

5    confidential mail.  Id.

6    In order for communications with an attorney to be processed confidentially, CCR

7    § 3142(a) states that "[t]he letter must be addressed to a person or to the office of a person listed

8    in Section 3141.  The address of an attorney must match the address listed with the State Bar."

9    Plaintiff's amended complaint challenges defendants' actions as they relate to

10   plaintiff's confidential letters to Cook and Ransom, and plaintiff's filings with the "courts."

11   Although plaintiff contends that certain confidential mail has been tampered with, the evidence

12   shows that plaintiff has sent and received numerous confidential / legal documents through the

13   HDSP mailroom concerning and/or challenging his underlying conviction on allegations of

14   prosecutorial misconduct to, inter alia, various attorneys, the U.S. Department of Justice, the Los

15   Angeles Superior Court, the American Civil Liberties Union, and the U.S. House of

16   Representatives.  See Mot. for Summ. J., Ex. C.

17   A.    Plaintiff's Correspondence with FBI Agent Brian Cook

18         1.    The June 18, 2006 Letter to Cook (Appeal No. HDSP-06-1983)

19   On July 11, 2006, plaintiff filed an inmate appeal form[4] (log number HDSP-06-

20   1983) complaining that a letter he mailed to Cook on June 18, 2006 was never received by Cook

21   and that it was not documented on the CDC 119 log, a mail log for confidential letters; plaintiff

22   requested that HDSP contact Cook regarding receipt of the letter.  Compl. at 8.  Plaintiff's appeal

23

24         [4] California prison regulations provide administrative procedures in the form of one
     informal and three formal levels of review to address an inmate's claims.  See Cal. Code Regs.
25   tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a plaintiff has
     received a "Director's Level Decision," or third level review, with respect to his issues or claims.
26   Cal. Code Regs. tit. 15, § 3084.5.

was partially granted at the informal level of review.  Id.  Plaintiff was informed that his letter was mailed out, but was not logged on the CDC 119 log because the FBI is not listed as an entity with whom an inmate may correspond confidentially.  Id.  Plaintiff appealed this decision on August 25, 2006.  Id.

Keating interviewed plaintiff at the first formal level, after which plaintiff's appeal was partially granted.  Compl. at 9-10.  Plaintiff was advised that his future correspondence with the FBI would be logged as confidential, but plaintiff's request that Cook be contacted to confirm receipt was denied.  Id.

Plaintiff appealed this decision October 4, 2006, asserting that previous correspondence with the FBI had been documented on the CDC 119 log.  Compl. at 9, 11.

Plaintiff's appeal was partially granted at the second formal level by McDonald. Compl. at 10.  Plaintiff was informed that all future correspondence with the FBI would consistently be listed on the CDC 119 log and that HDSP delivered plaintiff's mail to the U.S. Postal Service, after which it relinquished responsibility.  Id. at 12-14.

Plaintiff appealed this decision.  Compl. at 10.

On May 29, 2007, plaintiff's appeal was denied at the Director's Level.  Compl. at 6.  Plaintiff was again informed that although the FBI is not a recognized entity pursuant to CCR 3141 warranting confidential communication, HDSP has agreed to treat the communications as such.  Id.  The Director's Level found no error regarding the processing of plaintiff's mail and affirmed the second level's review of plaintiff's appeal.  Id.

2.   "Opened and Inspected" Stamp (Appeal No. HDSP-07-1670)

On April 18, 2007, plaintiff filed an inmate appeal form (appeal number HDSP-07-1670) stating that he received a letter from Cook who had enclosed with his letter a mailing envelope sent by plaintiff to Cook on April 16, 2007; that letter had an "Opened and Inspected by the Mailroom" stamp on it.  Compl. at 22.  Plaintiff accused the HDSP mailroom staff of opening plaintiff's confidential correspondence to Cook outside of plaintiff's presence, contrary to CDCR

1    regulations for the handling of confidential communications.  Id.  Plaintiff also argued that his

2    regular mail was being delayed or prevented.  Id.

3            Plaintiff's appeal was partially granted at the informal level.  Compl. at 23.  While

4    HDSP asked for the stamped envelope so as to investigate the matter, HDSP denied having an

5    "Opened and Inspected" stamp and suggested that the receiving party stamped the envelope.  Id.

6            Plaintiff appealed this decision on May 1, 2007, arguing that the receiving party

7    would have no reason to "open and inspect" the mail addressed to them.  Compl. at 23.

8            Keating interviewed plaintiff at the first formal level, after which plaintiff's

9    appeal was partially granted.  Compl. at 23, 26.  During the interview, plaintiff allegedly became

10   argumentative, causing Keating to cancel the interview.  Id. at 26.  Plaintiff was informed that

11   HDSP does not have a stamp that looks like the one on the envelope, and that the stamp was

12   most likely placed by the receiver of the envelope and provided to plaintiff as proof of receipt.

13   Id.  Plaintiff's assertion that his regular mail was being delayed or prevented was denied because

14   the interview was canceled before Keating obtained any information concerning this claim.  Id.

15           Plaintiff appealed this decision, arguing that it was Keating who became

16   argumentative before canceling the appeal.  Compl. at 23.

17           Plaintiff's appeal was partially granted at the second level by McDonald.  Compl.

18   at 24-25.  The first level response was affirmed as to the stamp and plaintiff was again informed

19   that HDSP does not have a stamp that states "Opened and Inspected by the Mailroom."  Id.  As to

20   plaintiff's allegation concerning his regular mail, this was denied as "unsubstantiated."  Id.

21           Plaintiff appealed this decision on July 30, 2007.  Compl. at 23.

22           Plaintiff's appeal was denied at the Director's Level.  Compl. at 22.  The

23   Director's Level affirmed the second level of review, and informed plaintiff that his legal mail

24   was processed per regulations and that he was receiving all in-coming mail.  Id.

25   /////

26   /////

7

B.   <u>Plaintiff's Correspondence with Attorney Charoletta Ransom</u>

Prior to 2009, plaintiff sent approximately six letters to Ransom through regular mail at Ransom's home address.  P.'s Depo at 20-21.  Ransom has never been retained as plaintiff's attorney.  <u>Id.</u> at 15.

On March 3, 2009 and March 9, 2009, plaintiff attempted to mail confidential letters to Ransom at her home address.  FAC at 6.  The letters were both returned to plaintiff by HDSP with directions to provide Ransom's State Bar number.  <u>Id.</u>

On March 11, 2009, plaintiff filed an inmate appeal form (appeal number HDSP-09-0645) complaining that the HDSP mailroom was prohibiting him from corresponding with Ransom.  Compl. at 43.  Plaintiff's appeal was denied at the informal level of review, and plaintiff was informed that he must supply the mailroom with the attorney's State Bar number and correct mailing address before the letters can be mailed.  <u>Id.</u>

Plaintiff appealed to the first formal level of review.  Compl. at 43.

On March 18, 2009, plaintiff filed a second inmate appeal form (appeal number HDSP-09-0696) also concerning his correspondence with Ransom.  Compl. at 36.  This appeal was denied at the informal level of review, and plaintiff was informed that the mailroom staff was unable to locate this attorney through the State Bar website.  <u>Id.</u> at 36.

Plaintiff appealed this decision to the first formal level of review.  Compl. at 36.

Keating reviewed these appeals and, due to their identical complaints, merged them.  During his investigation, Keating was informed by his staff that the name and address on the envelope addressed to Ransom did not match any of the attorneys listed with the California State Bar.  Keating Decl., ¶ 4.  Examination of the evidence reveals that HDSP misspelled Ransom's first and last names when searching for her records through the State Bar website.  <u>See</u> Compl. at 42.  The exhibits attached to the complaint indicate that HDSP misspelled Ransom's first name as either "Charlette" or "Charletta."  <u>See</u> Compl. at 36, 42.  The proper spelling is "Charoletta."  HDSP also misspelled Ransom's last name as "Ransen."  P.'s Depo at 35.

8

1    Keating spoke to plaintiff about his appeal, explaining that in order for plaintiff to

2    communicate with Ransom confidentially, plaintiff would need to provide Ransom's address as

3    listed with the State Bar or Ransom's State Bar number to enable access of her records through

4    the State Bar website.  Keating Decl., ¶ 5.  Plaintiff allegedly refused to provide either Ransom's

5    office address or State Bar number.  Id. ¶¶ 4-5.  Keating then gave plaintiff the option of sending

6    the letters to Ransom through regular mail, which plaintiff refused.  Id.; FAC at 6.  Because

7    plaintiff did not provide any information to allow Keating to process the mail to Ransom

8    confidentially and because plaintiff did not want his mail to be processed regularly, plaintiff's

9    appeal was cancelled on April 10, 2009 pursuant to CCR Title 15, section 3084.4(d) ("An

10   appellant's refusal to be interviewed or cooperate with the reviewer shall result in cancellation of

11   the appeal").  Plaintiff did not complete the appeal to the Director's Level.

12          On May 7, 2009, plaintiff again attempted to contact Ransom by mailing a

13   confidential letter; plaintiff completed a "Proof of Service by Mail" form evidencing delivery of

14   a letter addressed to Ransom's home address and dropped off in a box for the United States Mail

15   at HDSP.  FAC, Ex. 2 at 6.

16          On May 8, 2009, plaintiff's correspondence was returned to him with notice that

17   per CCR § 3142(a), "The address of an attorney must match the address listed with the State

18   Bar."  Compl., Ex. 2 at 7.  Plaintiff was informed that the address he provided did not match

19   Ransom's address listed with the State Bar.  Id.  Plaintiff was again given the option of either

20   correcting the address or providing Ransom's State Bar number.  Id.

21          On May 11, 2009, plaintiff filed his third appeal alleging that Keating was

22   continuing to mishandle plaintiff's confidential legal mail addressed to Ransom.  FAC, Ex. 2 at

23   12.  On May 15, 2009, plaintiff received an appeals screening form.  FAC, Ex. 2 at 11.  Noting

24   that the latest appeal was plaintiff's third appeal concerning the same issue, plaintiff was

25   reminded that his first two appeals were canceled and returned to him for his failure to cooperate.

26   Id.

9

1    Plaintiff once again filed an inmate appeal form challenging Keating's alleged

2  refusal to mail correspondence to Ransom.  FAC, Ex. 2 at 3.  On June 22, 2009, plaintiff

3  received an appeals screening form stating that appeal was screened because it was plaintiff's

4  third appeal within three days.  FAC, Ex. 2 at 1.  Per CCR 3084.4(a)(1-4), an inmate may submit

5  only one non-emergency appeal within a seven-calendar day period.

6    On July 22, 2009, plaintiff received a letter from the HDSP mailroom stating that

7  Ransom's mail "can not be verified in the directory as an attorney" and that if plaintiff "wish[es]

8  to have this correspondence mailed as regular mail, [he should] open the envelope, attach this

9  notice, initial here x____ and return everything to the mailroom for processing."  FAC, Ex. 2 at

10  5.

11    Plaintiff was subsequently informed by her mother that Ransom received on or

12  around October 2009 all six letters addressed to her home address from 2007 to 2008.  See P.'s

13  Depo. at 19-21, 42.  Plaintiff, however, has not submitted any admissible evidence attesting to

14  this allegation.[5]

15  C.    Plaintiff's Correspondence with the Courts

16    Lastly, plaintiff contends he has experienced difficulty with mailing filings to the

17  "courts."  When asked at his deposition to clarify to which courts he was referring, plaintiff

18  stated that he has had difficulty with only one court, a state court in Torrance, CA.  P.'s Depo at

19  30.  Plaintiff has not experienced any difficulty mailing or receiving any items from any other

20  court.  Id.

21                                    DISCUSSION

22    Defendants advance four grounds in support of their motion for summary

23  judgment.  First, they contend that plaintiff did not exhaust his administrative remedies as to his

24

25  _____

    [5]  Plaintiff attached to his FAC what appears to be a letter from Ransom dated October
    23, 2009 stating that as of October 20, 2009, she had received only two letters from plaintiff.  See
26  FAC, Ex. 3.  This letter, however, does not bear Ransom's signature and is not submitted under
    penalty of perjury.  See 28 U.S.C. § 1746.

                                        10

1   claim that his letters to Ransom were not mailed by defendants.  Second, they contend that

2   plaintiff has suffered no injury.  Third, they contend that there is no evidence that defendants

3   McDonald or Woodford are liable under a theory of respondeat superior.  Lastly, they contend

4   they are entitled to qualified immunity.

5   A.    Failure to Exhaust

6         "Section 1997e(a) of Title 42 of the United States Code provides:

7         No action shall be brought with respect to prison conditions under
          [42 U.S.C. § 1983], or any other Federal law, by a prisoner

8         confined in any jail, prison, or other correctional facility until such
          administrative remedies as are available are exhausted.

9

10   This exhaustion requirement is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001)."

11   McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. Dec. 5, 2002).  Exhaustion must precede the

12   filing of the complaint; compliance with the statute is not achieved by satisfying the exhaustion

13   requirement during the course of an action.  Id. at 1200.  Claims dismissed for failure to exhaust

14   administrative remedies should be dismissed without prejudice.  Id.

15         In Jones v. Bock, 549 U.S. 199, 218 (2007), the United States Supreme Court held

16   "that a prison's own grievance process, not [42 U.S.C. § 1997e(a)], determines how detailed a

17   grievance must be to satisfy" the statutory requirement.  Griffin v. Arpaio, 557 F.3d 1117, 1120

18   (9th Cir. 2009).  In Griffin, the United States Court of Appeals for the Ninth Circuit held that

19   "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a

20   grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"

21   Id. at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  "The primary purpose

22   of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay

23   groundwork for litigation."  Id.

24         California's Department of Corrections provides a four-step grievance
        process for prisoners who seek review of an administrative decision or perceived

25         mistreatment. Within fifteen working days of "the event or decision being
        appealed," the inmate must ordinarily file an "informal" appeal, through which

26         "the appellant and staff involved in the action or decision attempt to resolve the
        grievance informally."  Cal. Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c).

[Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] Id. § 3084.5(e)(1)-(2).

Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005).  Department regulations provide that the "informal level is waived for a variety of grievances, including those concerning 'alleged misconduct by a departmental peace officer.'  Cal. Code Regs. tit. 15, § 3084.5(a)(3)(G)." Brodheim v. Cry, 584 F.3d 1262, 1265 (9th Cir. 2009).

"Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . ." is required, Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," Woodford, 126 S.Ct. at 2382.  Pursuant to applicable regulations, the failure to cooperate or be interviewed constitutes abuse of the appeals system and results in cancellation of the appeal, subjecting it rejection upon screening.  Tit. 15, §§ 3084.3(c)(8), 3084.4(d).

Here, plaintiff's first two appeals concerning the processing of his mail to Ransom were canceled after plaintiff refused to provide Keating with the proper spelling of Ransom's name, her correct mailing address and/or her State Bar number.  By refusing to cooperate, plaintiff failed to comply with the procedural rules.  As such, defendants' motion for summary judgment on plaintiff's claim as they relate to the processing of his mail to Ransom should be granted for failure to exhaust administrative remedies.

B.      Plaintiff's Damage / Injury

Prison officials who deliberately interfere with the transmission of a prisoner's legal papers, or deny him access to a legitimate means to petition for redress for the purpose of thwarting his litigation may violate the prisoner's constitutionally protected right to access to the court.  Lewis v. Casey, 518 U.S. 343, 351-55 (1996); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994).  However, plaintiff must be able to demonstrate a specific actual injury involving a

1    nonfrivolous legal claim, <u>Lewis</u>, 518 U .S. at 351-55, and must allege facts showing that he

2    "could not present a claim to the courts because of the [defendants'] failure to fulfill [their]

3    constitutional obligations." <u>Allen v. Sakai</u>, 48 F.3d 1082, 1091 (9th Cir. 1994). An actual injury

4    will exist only if "a nonfrivolous legal claim had been frustrated or was being impeded." <u>Lewis</u>,

5    518 U.S. at 353 & n.3. Thus, an inmate must plead facts sufficient to show that prison officials

6    have actually frustrated or impeded a nonfrivolous attack on either his sentence or the conditions

7    of his confinement. <u>Id.</u> at 352-53.

8          In light of the court's recommendation that plaintiff's claim that HDSP was

9    deliberately thwarting his attempts to communicate with Ransom be dismissed, plaintiff's

10   remaining claims are HDSP's failure to mail a letter to Cook, HDSP's improper handling of a

11   confidential letter addressed to Cook, and HDSP's interference with mail sent to the "courts."

12         Upon review, the undersigned finds no evidence to support any of these

13   allegations. As to plaintiff's first claim, the facts show only that plaintiff submitted a letter to

14   HDSP for mailing, HDSP did not list that letter on the CDC 119 log, and Cook did not receive

15   the letter. No evidence has been submitted to justify a finding that Cook's non-receipt of

16   plaintiff's letter was due to any actions of HDSP staff as opposed to the U.S. Postal Service's

17   failure to deliver. Moreover, plaintiff's allegation that HDSP is preventing communication with

18   the FBI is belied by plaintiff's CDC 119 log, which evidences that plaintiff has mailed to and/or

19   received from the FBI multiple letters.

20         As to plaintiff's second claim that HDSP mishandled a confidential letter

21   addressed to Cook, the court again finds that there is no evidence from which to conclude that

22   HDSP violated plaintiff's rights by improperly opening and stamping the letter. To the contrary,

23   Keating has declared, and plaintiff has not refuted, that HDSP does not possess a stamp that

24   states "Opened and Inspected by the Mailroom."

25         Lastly, plaintiff's argument that he has experienced difficulty communicating with

26   the "courts" is unsupported. Plaintiff admits that he has had difficulty with only one court,

despite numerous filings in state and federal courts.  In his opposition, plaintiff asserts that he

attempted to mail a motion for extension of time to this court on October 31, 2010.  Opp'n at 4.

Plaintiff argues that the court has not responded and/or acknowledged receipt of this motion.  Id.

The docket, however, reflects that plaintiff filed a motion for an extension of time on November

15, 2010, which was granted on November 30, 2010.  See Doc. Nos. 49-50.  Plaintiff was

granted up to and including December 30, 2010 to file his opposition.  Plaintiff filed his

opposition on December 29, 2010.  Doc. No. 56.

Because the court does not find that plaintiff's mail has been tampered with, it is

immaterial whether plaintiff has claimed injury.  Nonetheless, the court will address certain

unsustainable allegations of injury made in plaintiff's opposition.  Plaintiff contends that as a

result of HDSP's mishandling of his mail, he has lost the representation of the Los Angeles

Public Defender's office and, further, that he has been denied multiple requests made pursuant to

the Freedom of Information Act, 5 U.S.C. § 552, to obtain records from the Bureau of Alcohol,

Tobacco, Firearms and Explosives ("ATF") – losses and denials that the plaintiff notes coincided

with the filing of the instant lawsuit.  See Opp'n at 3.  Any connection between these incidents is

tenuous.  The Public Defender's letter withdrawing representation indicates that the withdrawal

was due to the fact that the type of claim plaintiff sought to pursue through habeas corpus

(prosecutorial misconduct) was not the type litigated by that office, which focuses on peace

officer misconduct.  Opp'n, Ex. 2 at 1.  Moreover, the ATF's denial of requests for information

was made nearly one year prior to the initiation of this suit and was based on exceptions provided

by 5 U.S.C. § 552(b)(3).  See id. at 11.

Accordingly, the undersigned recommends that defendants' motion for summary

judgment be granted as to this ground.

C.      Respondeat Superior

Next, defendants seek summary judgment on the ground that plaintiff has failed to

state any allegations as to defendants McDonald and Woodford.

14

1    Supervisory personnel are generally not liable under section 1983 for the actions

2    of their employees under a theory of respondeat superior and, therefore, when a named defendant

3    holds a supervisorial position, the causal link between him and the claimed constitutional

4    violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

5    Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague

6    and conclusory allegations concerning the involvement of official personnel in civil rights

7    violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8    Examination of the FAC reveals no charging allegations as to either McDonald or

9    Woodford.  In fact, other than listing their names as defendants in this action and McDonald's

10   processing of plaintiff's appeals at the second formal level, there is no further mention of either

11   McDonald or Woodford.  Accordingly, defendants' motion for summary judgment should be

12   granted as to this ground.

13   D.    Qualified Immunity

14   For the reasons set forth above, the court declines to address defendants' argument

15   for qualified immunity.

16   For all of the foregoing reasons, IT IS HEREBY ORDERED that:

17   1.  Defendants' motion to strike be granted;

18   2.  Plaintiff's motion to file a sur-reply be denied; and

19   IT IS HEREBY RECOMMENDED that defendants' September 17, 2010 motion

20   for summary judgment be granted.

21   These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23   days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

26   /////

1   failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: March 25, 2011.

4

5

6                          UNITED STATES MAGISTRATE JUDGE

7   /014;penn2443.msj

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26